IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| WILLIAM A. HENDERSON,<br><br>       Petitioner,<br><br>    vs.<br><br>THOMAS GRIFFIN, Superintendent,<br>Green Haven Correctional Facility,<br><br>       Respondent. | No. 9:16-cv-01181-JKS<br><br>MEMORANDUM DECISION |

William A. Henderson, a New York state prisoner proceeding *pro se*, filed a Petition for a Writ of Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254. Henderson is in the custody of the New York State Department of Corrections and Community Supervision and incarcerated at Green Haven Correctional Facility. Respondent has answered the Petition, and Henderson has replied.

I. BACKGROUND/PRIOR PROCEEDINGS

On September 13, 2005, Henderson was charged with two counts of second-degree murder (intentional murder and felony murder—Counts 1 and 2), first-degree burglary (Count 3), two counts of second-degree assault (intentional assault and felony assault—Counts 4 and 5), and two counts of second-degree burglary (burglary resulting in physical injury and burglarizing a dwelling—Counts 6 and 7). On direct appeal of his conviction, the New York Court of Appeal summarized the following facts underlying the charges against Henderson:

> Defendant William Henderson, his cousin and a friend broke into an apartment looking for two individuals who the men suspected had robbed them of drugs and money that were kept in an associate's nearby apartment. When [Henderson] broke down the door to the apartment, the suspected thieves were not inside. Rather, the victim and his girlfriend were in an upstairs bedroom. When the victim heard the downstairs door being

kicked in, he opened the door to the bedroom and saw the men coming up the stairs. [Henderson] was screaming and asking for the whereabouts of the individuals he believed had stolen the drugs. The victim told [Henderson] to leave. [Henderson] then punched the victim in the face and a fistfight ensued. The victim's girlfriend hit [Henderson] over the head with a bottle. At some point, she heard sirens and stated that the police were coming. [Henderson] and the other men ran out of the apartment, returning to their associate's apartment.

      [Henderson] took a knife out of the knife block in his associate's kitchen, telling his associate that he was "going to kill him," presumably referring to the victim. [Henderson] returned to the victim's apartment holding the knife in his hand. The victim told his girlfriend to run, and she ran out of the back door to a neighbor's apartment and called 911. As she ran out of the apartment, she heard glass shattering. A bottle had apparently been broken over the victim's head. The victim's girlfriend then ran back to the apartment and saw the victim exit the door and slump down on the stoop with shards of glass protruding from his scalp and blood pouring from his back. The victim told his girlfriend that he thought he had been stabbed, and he thereafter lost consciousness. [Henderson] fled the apartment, got into a vehicle with his friend and sped off just as the police arrived. After the police pursued the vehicle, [Henderson] and his friend were arrested. [Henderson's] cousin, who was still in the associate's apartment when [Henderson] stabbed the victim, was also arrested. EMTs tried but failed to resuscitate the victim, and he was pronounced dead.

*People v. Henderson*, 35 N.E.3d 534, 536-37 (N.Y. 2015).

Henderson proceeded to a jury trial on March 6, 2006, after which the jury acquitted Henderson of felony murder, but found him guilty of the lesser-included charge of first-degree manslaughter. The jury also found Henderson guilty of the remaining counts. Henderson appealed his conviction, and the Appellate Division of the New York Supreme Court reversed the conviction and remitted to the County Court for a retrial.[1] *People v. Henderson*, 903 N.Y.S.2d 589, 594 (N.Y. App. Div. 2010).

---

[1] The appellate court concluded that the trial court committed reversible error in dismissing a sworn jury over Henderson's objection where the court "never articulated a conclusion that the juror possessed a state of mind that would prevent his rendering an impartial verdict" and "fail[ed] to address the juror's state of mind, his assurances of impartiality, or the important of his knowledge and its bearing on the case." *Id.* at 593-94.

The re-trial began with jury selection on May 9, 2011.[2] During trial, the associate testified for the People that Henderson, his cousin, and their friend had left her apartment for a period of time. When they returned, Henderson appeared upset, took a kitchen knife, and said he was "going to kill him." Henderson refused to comply with the associate's request that he return the knife. The victim's girlfriend also testified for the People that Henderson and other men broke into the apartment. She described the ensuing fight between Henderson and the victim and testified that the victim told her that he had been stabbed. The medical examiner who conducted the victim's autopsy also testified for the People, opining that the victim's cause of death was a hemorrhage as a result of a stab wound to his left back, which perforated his aorta.

Although Henderson testified at his first trial, he did not testify on re-trial. However, his testimony from the first trial was read into the record. In his initial trial, Henderson testified that, while he was going to the associate's apartment, the victim made a racial slur and threw a bottle at him. Henderson admitted to breaking into the victim's apartment, fighting with him, and returning with a knife, but testified that he did not intend to kill the victim. He stated that he "wanted to hurt him like he hurt me with the bottle."

At the conclusion of trial, the jury convicted Henderson of felony murder, first-degree manslaughter, first-degree burglary, and second-degree assault. Through counsel, Henderson appealed the conviction, arguing that the evidence of felony murder was legally insufficient because the predicate burglary was based upon his conceded intent to commit an assault. The

---

[2] Because Henderson was found guilty of the lesser-included offense of first-degree manslaughter, to prosecute Henderson on that charge, the People were required to obtain an indictment to allow the grand jury to consider that charge. Henderson was subsequently charged with first-degree murder, and the county court consolidated the two indictments upon the People's motion.

Appellate Division rejected that argument, holding that "[a] felony murder conviction . . . may properly be based on a burglary as the predicate felony where the intent at the time of entry is to commit an assault or murder" and that "the trial evidence supports the conclusion that Henderson entered the apartment the second time with the intent to assault or murder the victim." *People v. Henderson*, 973 N.Y.S.2d 863, 864 (N.Y. App. Div. 2013). The Appellate Division also concluded that the county court did not err by denying Henderson's requests to charge the jury with a missing witness charge and the lesser included offense of second-degree manslaughter. *Id.* The appellate court thus affirmed the judgement against Henderson in its entirety.

A judge of the New York Court of Appeal granted Henderson leave to appeal. *People v. Henderson*, 11 N.E.3d 720, 770 (N.Y. 2014). On appeal, the Court of Appeal affirmed, concluding that there was legally sufficient evidence in the record to support Henderson's conviction for felony murder and summarily rejecting Henderson's remaining contentions. *Henderson*, 35 N.E.3d at 844-45.

Henderson then timely filed a *pro se* Petition for a Writ of Habeas Corpus to this Court on September 27, 2016. *See* 28 U.S.C. § 2244(d)(1)(A).

## II. GROUNDS RAISED

In his *pro se* Petition before this Court, Henderson raises the claims that he unsuccessfully raised to the state courts on direct appeal. Namely, he argues that: 1) the evidence was legally insufficient to support his felony murder conviction; 2) the trial court erred in refusing to charge the lesser-included offense of second-degree manslaughter; and 3) the trial court erred in refusing to issue a missing witness charge for his cousin.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2). A state-court decision is contrary to federal law if the state court applies a rule that contradicts controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, but nevertheless arrives at a different result. *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding. *See Swarthout v. Cooke*, 131 S. Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied). It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law. *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).

In applying these standards on habeas review, this Court reviews the "last reasoned decision" by the state court. *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000). Where there is no reasoned decision of the state court

addressing the ground or grounds raised on the merits and no independent state grounds exist for not addressing those grounds, this Court must decide the issues de novo on the record before it. *See Dolphy v. Mantello*, 552 F.3d 236, 239-40 (2d Cir. 2009) (citing *Spears v. Greiner*, 459 F.3d 200, 203 (2d Cir. 2006)); *cf. Wiggins v. Smith*, 539 U.S. 510, 530-31 (2003) (applying a de novo standard to a federal claim not reached by the state court). In so doing, the Court presumes that the state court decided the claim on the merits and the decision rested on federal grounds. *See Coleman v. Thompson*, 501 U.S. 722, 740 (1991); *Harris v. Reed*, 489 U.S. 255, 263 (1989); *see also Jimenez v. Walker*, 458 F.3d 130, 140 (2d Cir. 2006) (explaining the *Harris-Coleman* interplay); *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 810-11 (2d Cir. 2000) (same). This Court gives the presumed decision of the state court the same AEDPA deference that it would give a reasoned decision of the state court. *Harrington v. Richter*, 131 S. Ct. 770, 784-85 (2011) (rejecting the argument that a summary disposition was not entitled to § 2254(d) deference); *Jimenez*, 458 F.3d at 145-46. Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

A.   <u>Sufficiency of the Evidence (Ground 1)</u>

Henderson first argues that the evidence was legally insufficient to support his conviction of felony murder. In the last reasoned decision addressing this claim, the New York Court of Appeals considered and rejected it as follows:

> There is legally sufficient evidence in this record to support [Henderson's] conviction for felony murder.

Penal Law § 125.25(3) provides that a person is guilty of murder in the second degree if he or she commits or attempts to commit one of 10 enumerated felonies, "and, in the course of and in furtherance of such crime . . . causes the death of [another]." The felony murder statute includes, in its list of predicate felonies, the crime of burglary. To establish the crime of burglary, it must be shown that the defendant "knowingly enters or remains unlawfully in a building with intent to commit a crime therein" (Penal Law § 140.20).

[Henderson] presently argues that the evidence adduced at trial demonstrates that the second time he entered the victim's apartment, he did so with the intent to kill. As support, [Henderson] relies on his associate's testimony that after he took the knife, he stated he was "going to kill" the victim. He asserts that a felony murder conviction cannot be predicated on burglary when the intended crime underlying the burglary is murder, because to do so would double-count a single mens rea of intent to kill. There was evidence at trial, however, that [Henderson's] intent when he reentered the victim's apartment was to commit assault, not kill the victim. [Henderson] testified that he initially retrieved the knife because "[he] was mad [he] got assaulted" by the victim "and [he] wanted to even the odds." He admitted that upon his reentry, he immediately began to fight with the victim. He denied returning to the apartment to kill the victim, but admitted he intended to "hurt" him. [Henderson] stabbed the victim only after the victim "swung" at him. Although [Henderson] told his associate that he wanted to kill the victim, viewing the evidence, as we must, in the light most favorable to the People (*see People v. Delamota*, 18 N.Y.3d 107, 113, 936 N.Y.S.2d 614, 960 N.E.2d 383 [2011]; *People v. Conway*, 6 N.Y.3d 869, 872, 816 N.Y.S.2d 731, 849 N.E.2d 954 [2006]), a rational trier of fact could conclude that, based upon [Henderson's] own statements, [Henderson] committed the crime of burglary when he entered the apartment with the intent to assault the victim and during that burglary [Henderson] caused the victim's death.

We now consider the question of whether there was legally sufficient evidence of felony murder. We conclude legally sufficient evidence exists here. As we held in *People v. Miller*, 32 N.Y.2d 157, 344 N.Y.S.2d 342, 297 N.E.2d 85 (1973), a felony murder conviction may be predicated upon the commission of a burglary where the defendant's underlying intent is to assault the victim. In that case, the defendant broke into an apartment intending to assault one of the occupants, Fennell. The defendant entered the apartment and stabbed Fennell in the arm while spraying a chemical in Fennell's face. Aleem, Fennell's roommate, came to Fennell's aid, and the defendant killed Aleem by stabbing him in the chest. This Court held that a felony murder charge predicated on burglary was sufficient for conviction of felony murder on those facts, despite the defendant's argument that the intent to commit assault underlying the burglary merged with the homicide (*id.* at 159, 344 N.Y.S.2d 342, 297 N.E.2d 85).

Noting the legislature's inclusion of burglary of all degrees, without qualification, as a predicate felony for felony murder, we observed "that persons within domiciles are in greater peril from those entering the domicile with criminal intent, than persons on the street who are being subjected to the same criminal intent. Thus, the burglary statutes

prescribe greater punishment for a criminal act committed within the domicile than for the same act committed on the street" (*id.* at 160, 344 N.Y.S.2d 342, 297 N.E.2d 85).

It is clear that the legislature chose to treat burglary differently than other crimes. Therefore, an individual who approaches another on the street with an intent to assault but causes the death of that person could be convicted of manslaughter, but not felony murder. It is entirely reasonable, however, that a person—like [Henderson]—who unlawfully enters a building with the intent to commit an assault therein, but causes the death of another, may be convicted of felony murder, in recognition that the homicide occurs in the context of other criminal activity that enhances the seriousness of the offense.

Although *Miller* involved two victims, our rationale in *Miller* is applicable here. The defendant's intent in *Miller* to assault one victim when unlawfully entering the apartment, combined with the murder that resulted in the course of and in furtherance of the burglary, was sufficient to support a felony murder conviction. This Court's holding in *Miller* was not limited to circumstances where a defendant killed a victim other than the one he or she intended to harm. Here, [Henderson] unlawfully entered the victim's apartment with the singular intent to assault him, but caused his death. [Henderson's] felony murder conviction, therefore, is supported by legally sufficient evidence.

Although defendant urges this Court to answer a question we expressly left open in *People v. Cahill*, 2 N.Y.3d 14, 777 N.Y.S.2d 332, 809 N.E.2d 561 (2003), this case does not present us with an occasion to do so. In *People v. Cahill*, involving the capital murder statute, we did not address whether a person who enters a building with the intent to kill may properly be convicted of felony murder. Likewise, we need not answer that question here because there is sufficient evidence from which a rational jury could conclude that [Henderson] entered the victim's apartment with the sole intent to commit assault. Furthermore, in *Cahill* this Court repeatedly explained that the holding in that case was consistent with, and had no impact on, the holding of *Miller*.

[Henderson] also argues that his felony murder conviction rests on legally insufficient evidence because there is no evidence that he committed the murder "in furtherance of" a burglary. He asserts that the statutory language "in furtherance of" requires that the death be caused in order to advance or promote the underlying felony. We have not interpreted "in furtherance of" so narrowly. The felony murder statute is intended to punish a perpetrator for a death he or she caused during the commission of a felony, but not a death that is coincidental to the felony (*see People v. Hernandez*, 82 N.Y.2d 309, 317, 604 N.Y.S.2d 524, 624 N.E.2d 661 [1993]). The "in furtherance of" element requires "a logical nexus between a murder and a felony" (*Cahill*, 2 N.Y.3d at 101–102, 777 N.Y.S.2d 332, 809 N.E.2d 561 [Graffeo, J., concurring in part and dissenting in part], citing *People v. Lewis*, 111 Misc.2d 682, 444 N.Y.S.2d 1003 [Sup. Ct., N.Y. County 1981] ). Here, there is a clear logical nexus between defendant's felony of unlawfully entering the victim's apartment to assault him and the homicide, which was certainly not coincidental. Limiting the "in furtherance of" element to murders that promote or advance the felony, as [Henderson] suggests, would exclude from felony murder a large class of murders. Given that the purpose of the felony murder statute was to broaden liability for deaths that occur during the commission of certain enumerated

8

> felonies, the legislature could not have possibly intended such a result (*see Cahill*, 2 N.Y.3d at 66–68, 777 N.Y.S.2d 332, 809 N.E.2d 561).  Thus, [Henderson's] conviction for felony murder is based upon legally sufficient evidence.

*Henderson*, 35 N.E.3d at 843-45.

As articulated by the Supreme Court in *Jackson*, the constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original); *see McDaniel v. Brown*, 558 U.S. 120, 132-33 (2010) (reaffirming this standard).  This Court must therefore determine whether the New York court unreasonably applied *Jackson*.  In making this determination, this Court may not usurp the role of the finder of fact by considering how it would have resolved any conflicts in the evidence, made the inferences, or considered the evidence at trial.  *Jackson*, 443 U.S. at 318-19.  Rather, when "faced with a record of historical facts that supports conflicting inferences," this Court "must presume–even if it does not affirmatively appear in the record–that the trier of fact resolved any such conflicts in favor of the prosecution, and defer to that resolution."  *Id.* at 326.

It is a fundamental precept of dual federalism that the States possess primary authority for defining and enforcing the criminal law.  *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).  Consequently, although the sufficiency of the evidence review by this Court is grounded in the Fourteenth Amendment, it must take its inquiry by reference to the elements of the crime as set forth in state law.  *Jackson*, 443 U.S. at 324 n.16.  A fundamental principle of our federal system is "that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."  *Bradshaw v. Richey*, 546

U.S. 74, 76 (2005); *see West v. AT&T*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law . . . ."). "Federal courts hold no supervisory authority over state judicial proceedings and may intervene only to correct wrongs of constitutional dimension." *Sanchez-Llamas v. Oregon*, 548 U.S. 331, 345 (2006) (quoting *Smith v. Philips*, 455 U.S. 209, 221 (1982)) (internal quotation marks omitted).

Henderson makes two arguments. First, he contends that "the prosecutor failed to prove that the killing was 'in furtherance' of the burglary." According to Henderson, the evidence proved that the burglary was committed in furtherance of the murder, and not vice versa, which was required for a felony murder conviction. In support of this argument, Henderson cites to an opinion by the Second Circuit Court of Appeals, *Langston v. Smith*, 630 F.3d 310 (2d Cir. 2011). In *Langston*, when the petitioner brought undercover officers to the place of an arranged gun sale, three men pulled out guns and opened fire on the officers, hitting and permanently injuring one of them. *Id.* at 312. At trial, the prosecutor argued that the crime was a botched robbery and that petitioner did not intend to sell the officers guns, but rather lured them to the site to rob them. *Id.* at 316. Because petitioner was not charged with attempted robbery, however, to convict petitioner of felony assault, the jury had to find that petitioner committed an assault "in furtherance of" gun possession, which it did. *Id.* at 316-17. The Second Circuit affirmed the district court's grant of habeas relief on the ground that there was an insufficient nexus between the assault and the underlying crime; while the assault may have been in furtherance of the robbery, there was no rational reading of the evidence to show that the assault was committed in furtherance of the petitioner's desire to possess the guns. *Id.* at 319-20.

*Langston* is inapplicable here, however. As the Court of Appeals reasonably concluded, "there is a clear logical nexus between [Henderson's] felony of unlawfully entering the victim's apartment to assault him and the homicide, which was certainly not coincidental." *Henderson*, 35 N.E.3d at 845. The Court of Appeals rejected Henderson's argument that the statutory language "in furtherance of" requires that the death be caused in order to advance or promote the underlying felony because it would exclude from felony murders a large class of murders and, "[g]iven that the purpose of the felony murder statute was to broaden liability for deaths that occur during the commission of certain enumerated felonies, the legislature could not have possibly intended such a result." *Id.* As aforementioned, this interpretation of state law by the New York Court of Appeals is binding on this Court on federal habeas review. *Bradshaw*, 546 U.S. at 76; *see West*, 311 U.S. at 236.

Henderson additionally argues that "the felony murder charge improperly 'double counts' the same mens rea that elevates trespass to burglary." This argument relies on the New York Court of Appeals' decision in *People v. Cahill*, 809 N.E.2d 561 (N.Y. 2003), a death penalty case where the Court of Appeals held that burglary, with the intent to kill the murder victim, could not serve as the underlying felony for first-degree murder. The New York Appellate Division rejected this argument:

> The Court of Appeals took care to point out that its analysis in *Cahill* was confined to the capital murder statute. A felony murder conviction, on the other hand, may properly be based on a burglary where the intent at the time of entry is to commit an assault or murder.

*Henderson*, 973 N.Y.S.2d at 864 (citations omitted).

Again, this interpretation of New York state law is binding on this Court. *Bradshaw*, 546 U.S. at 76; *see West*, 311 U.S. at 236. Henderson is therefore not entitled to relief on any argument advanced in support of his insufficiency of the evidence claim.

B.      Instructional Errors (Grounds 2, 3)

Henderson additionally argues that the trial court erred in rejecting two requested charges: a) the lesser-included offense of second-degree manslaughter; and 2) a missing witness charge for his cousin.

The propriety of a state court's jury instructions is ordinarily a matter of state law and does not raise a federal constitutional questions. *See Cupp v. Naughten*, 414 U.S. 141, 146 (1973); *Estelle*, 502 U.S. at 68. A challenged instruction violates the federal constitution if there is a "reasonable likelihood that the jury has applied the challenged instruction in a way that prevents the consideration of constitutionally relevant evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990). The question is whether the instruction, when read in the context of the jury charges as a whole, is sufficiently erroneous to violate the Fourteenth Amendment. *Francis v. Franklin*, 471 U.S. 307, 309 (1985). This Court must also assume in the absence of evidence to the contrary that the jury followed those instructions. *Weeks v. Angelone*, 528 U.S. 225, 234 (2000); *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) (noting the "almost invariable assumption of the law that jurors follow their instructions"); *see Francis*, 471 U.S. at 323-24 & n.9 (discussing the subject in depth).

It is well established that not only must the challenged instruction be erroneous, it must also violate some constitutional right, and it may not be judged in artificial isolation but must be considered in the context of the instructions as a whole and the trial record. *Estelle*, 502 U.S. at

72. This Court must also bear in mind that the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution and that the category of infractions that violate "fundamental fairness" is very narrowly drawn. *Id.* at 72-73. "Beyond the specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited operation." *Id*. Where the defect is the failure to give an instruction, the burden is even heavier because an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson*, 431 U.S. at 155. In those cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process." *See id.* at 156-57; *Estelle*, 502 U.S. at 72.

     As an initial matter, Respondent correctly contends that Henderson's instructional error claims are unexhausted. This Court may not consider claims that have not been fairly presented to the state courts. 28 U.S.C. § 2254(b)(1); *see Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing cases). Exhaustion of state remedies requires the petition to fairly present federal claims to the state courts in order to give the state the opportunity to pass upon and correct alleged violations of its prisoners' federal rights. *Duncan v. Henry*, 513 U.S. 364, 365 (1995). A petitioner must alert the state courts to the fact that he is asserting a federal claim in order to fairly present the legal basis of the claim. *Id.* at 365-66. An issue is exhausted when the substance of the federal claim is clearly raised and decided in the state court proceedings, irrespective of the label used. *Jackson v. Edwards*, 404 F.3d 612, 619 (2d Cir. 2005). To be deemed exhausted, a claim must also have been presented to the highest state court that may consider the issue presented. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). In New York, to invoke one complete round

of the State's established appellate process, a criminal defendant must first appeal his or her conviction to the Appellate Division and then seek further review by applying to the Court of Appeals for leave to appeal. *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005). Further, "when a 'petitioner failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' the federal habeas court should consider the claim to be procedurally defaulted." *Clark v. Perez*, 510 F.3d 382, 390 (2d Cir. 2008) (citation omitted); *see also Grey v. Hoke*, 933 F.2d 117, 121 (2d Cir. 2001).

Here, Henderson did not assert either of these claims in federal constitutional terms before the state courts. Because it appears that these unexhausted claims are based on the record, they could have been fully raised on direct appeal but were not; consequently, Henderson cannot bring a motion to vacate as to such claims. N.Y. CRIM. PROC. LAW § 440.10(2)(c) ("[T]he court must deny a motion to vacate a judgment when[,][a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's unjustifiable failure to take or perfect an appeal . . . ."). Accordingly, they may be deemed exhausted but procedurally defaulted. *Clark*, 510 F.3d at 390; *Grey*, 933 F.2d at 121. Moreover, even if Henderson had fully exhausted them, as discussed below, the claims are without merit.

1. *Lesser-included offense*

The United States Supreme Court has held that the failure to instruct on a lesser included offense in a capital case is constitutional error if there was evidence to support the instruction.

*Beck v. Alabama*, 447 U.S. 625, 638 (1980).  The Supreme Court, however, has not decided whether to extend this rationale to non-capital cases.  The Courts of Appeals are in some disagreement about whether the failure to include a lesser-included offense instruction can rise to the level of a constitutional violation in a non-capital case.  *See Robertson v. Hanks*, 140 F.3d 707, 710 (7th Cir. 1998) (summarizing cases).  The Second Circuit has not decided the question. *See Jones v. Hoffman*, 86 F.3d 46, 48 (2d Cir. 1996).  However, in *Jones*, the Second Circuit held that a claimed error in failing to include a lesser-included offense instruction in a non-capital case is not cognizable in a habeas corpus proceeding.  *Id.*  The *Jones* Court reasoned that, under *Teague v. Lane*, 489 U.S. 288, 301 (1989), a habeas petition cannot be used to apply a new rule of law.  *Jones*, 86 F.3d at 48.  It also held that none of the exceptions to *Teague* would apply to allow consideration of a claimed constitutional violation for failure to include a lesser-included offense instruction in a non-capital case.  *Id*.  Therefore, *Jones* and *Teague* preclude consideration of Henderson 'sclaim that he was entitled to the lesser charge of second-degree manslaughter.  Henderson was charged with second-degree murder, which was not a capital offense in New York at the time of the crime.³  Therefore, the failure to charge a lesser-included offense is not cognizable under federal habeas review, and Henderson's claim must be denied.

In any event, the claim is without merit.  As the Appellate Division concluded on direct appeal:

---

³ The New York Court of Appeals held New York's death penalty statute unconstitutional in June 2004, *see People v. LaValle*, 817 N.E.2d 341 (N.Y. 2004), more than a year before Henderson's crime was committed in September 2005.

> [Henderson's] request to charge the lesser included offense of manslaughter in the second degree was also properly denied as there is no reasonable view of the evidence that would support a conclusion that he acted recklessly. He admitted that he intended to hurt the victim when he stabbed him and, based on the nature and force of the fatal stab wound, the only reasonable view of [Henderson's] conduct was that it was intentional.

*Henderson*, 973 N.Y.S.2d at 864.

That determination is both reasonable and fully supported by the record. Henderson is therefore not entitled to relief on this claim in any event.

2.     *Missing witness charge*

Henderson likewise contends that the trial court erred in refusing to issue a missing witness charge with respect to Henderson's cousin, who testified at Henderson's first trial as a condition of his guilty plea.

"The 'missing witness' instruction allows a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events." *People v. Savinon*, 791 N.E.2d 401, 403 (N.Y. 2003). There are three preconditions for giving a missing witness instruction under state law. "First, the witness's knowledge must be material to the trial. Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought. This has been referred to as the 'control' element, which requires the court to evaluate the relationship between the witness and the party to whom the witness is expected to be faithful. Third, the witness must be available to that party." *Id.* at 404.

The record indicates that defense counsel requested a missing witness charge for the cousin after the close of evidence. The People objected to the motion as untimely, and argued that the cousin likely would not testify favorably on their behalf and, because he had already

16

served the sentence for which he received the plea offer, was not under the People's control. The record indicates that the trial court concluded that the cousin was not under the People's control and thus a missing witness charge was not warranted. On appeal, the Appellate Division held that the request was untimely, and alternatively, without merit, and the Court of Appeal silently denied the claim. Henderson fails to show that the decision of the state courts was unreasonable or contrary to federal law. Moreover, in light of the strong evidence against him and his own admissions, Henderson does not establish that any error in failing to issue a missing witness instruction had a substantial and injurious effect on the jury's verdict. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Henderson is therefore not entitled to relief on this instructional error claim either.

## V. CONCLUSION

Henderson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for a Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability. 28 U.S.C. § 2253(c); *Banks v. Dretke,* 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*,

537 U.S. at 327)). Any further request for a Certificate of Appealability must be addressed to the Court of Appeals. *See* FED. R. APP. P. 22(b); 2D CIR. R. 22.1.

The Clerk of the Court is to enter judgment accordingly.

Dated: February 12, 2018.

/s/ James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge
